## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CAROL LEEBOVE , WANDA SANTA AND
DENISE SANTIAGO individually and on behalf of
all others similarly situated,

Case No. 1:12-cv-07146-JGK

ECF CASE

Plaintiffs,

v.

MAYBELLINE, LLC a New York limited liability
company, d/b/a MAYBELLINE NEW YORK

Defendant.

**AMENDED CLASS ACTION
COMPLAINT**

**Demand for Jury Trial**

JAN 1 0 2013

Carol Leebove ("Leebove"), Denise Santiago ("Santiago") and Wanda Santa ("Santa")
(hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all others
similarly situated, by and through their undersigned counsel Paris Ackerman & Schmierer LLP
and Nagel Rice, LLP, bring this action against defendant Maybelline LLC a New York limited
liability company, d/b/a Maybelline New York (hereinafter referred to as "Maybelline" or
"Defendant"), demanding a trial by jury, and allege as follows:

### NATURE OF THE ACTION

1.      This is a class action seeking redress for Defendant's deceptive practices in its
marketing, advertising and promotion of its "Super Stay 10HR Stain Gloss" ("Super Stay
Gloss") and "Super Stay 14HR Lipstick" ("Super Stay Lipstick") (hereinafter collectively
referred to as "the Super Stay Products"). As alleged with specificity herein, the Defendant has
engaged in, and continues to engage in, unconscionable business practices and deceptive acts in
connection with the marketing and sale of its Super Stay Products, which have injured Plaintiffs

and the putative class and which will continue to injure consumers unless the practices are stopped.

2.      Maybelline deceptively and misleadingly markets, promotes, and advertises its Super Stay Gloss as the "first-ever 10HR stain gloss" on the product packaging and in various forms of media including television commercials and on the company's website.[1]

3.      Maybelline's deceptive and misleading marketing, advertising and promotional materials boast that the Super Stay Gloss "stays vibrant and shiny, yet transparent, and won't fade"[2] for a ten hour period.

4.      Indeed, the misrepresentation as to the duration of the product's staying power is inherent in the very name of the product - "Super Stay 10HR Stain Gloss."

5.      Maybelline's deceptive and misleading marketing, advertising and promotional materials boast that the Super Stay Lipstick is a "14HR lipstick that won't weigh you down" and that the product has "[s]uper rich color with super staying power."[3]

6.      As with Super Stay Gloss, the misrepresentation as to the duration of Super Stay Lipstick's staying power is inherent in the very name of the product - "Super Stay 14HR Lipstick."

7.      Contrary to these representations in Maybelline's marketing and promotional materials, the Super Stay Products do not remain on the wearer's lips for the extended periods as advertised.

8.      Rather, the Super Stay Products wear off and fade after only a few hours of wear.

---

[1] http://www.maybelline.com/products/161/lips/lip-gloss/superstay-10hr-stain-gloss/
[2] http://www.maybelline.com/products/161
[3] http://www.maybelline.com/products/160/lips/lip-color/superstay-14hr-lipstick/eternal-rose/020?shadeId=882

9.     Maybelline has thus misled consumers into believing that the Super Stay Products would remain on their lips for a longer period of time than Maybelline's other less expensive lipstick products, when it did not.

10.     Maybelline misrepresents the staying power of its Super Stay Products as a means to induce consumers to pay a premium for the Super Stay Products.

11.     Both Super Stay Products are sold to consumers on Maybelline's website for $8.99 per tube.

12.     The Super Stay Products can also be purchased at drug stores, super markets, beauty supply stores, department stores and through dozens of online merchant sites for $8.49.

13.     By contrast, Maybelline's other lipstick products that do not contain the alleged extended wear characteristics are *less expensive* than the Super Stay Products.

14.     Such other Maybelline lipstick products are available to consumers for $1 less than the Super Stay Products.

15.     As alleged with specificity herein, the price of the Super Stay Products were therefore inflated as a result of Maybelline's deception.

16.     Although the Super Stay Products are more expensive than Maybelline's other lipstick products and consumers paid a premium for such products, the Super Stay Products failed to work for its intended purpose.

17.     By paying a premium and an inflated price for these Super Stay Products, the Plaintiffs were actually harmed and have been injured.

18.     Defendants have unjustly profited from their deceptive marketing of the Super Stay Products.  Because the Plaintiffs and thousands of consumers paid for these Super Stay

Products, Maybelline has been enriched at their expense, and it is against equity and good conscience to permit Maybelline to retain these monies.

19.     Defendant's misrepresentations about the Super Stay Products constitutes an unconscionable and deceptive commercial practice in violation of the New Jersey Consumer Fraud Act, New York's General Business Law, Michigan's Consumer Protection Act as well as constituting a breach of express warranties.  Plaintiffs bring this action on behalf of themselves and classes of similarly situated persons, seeking an order enjoining such practices as well as for monetary damages.

## PARTIES

20.     Leebove is, and at all times relevant hereto has been, a citizen of the State of Michigan and is over the lawful age of majority, and purchased the Super Stay Products during the relevant Class Period.

21.     Santiago is, and at all times relevant hereto has been, a citizen of the State of New Jersey and is over the lawful age of majority, and purchased Super Stay Lipstick during the relevant Class Period.

22.     Santa is, and at all times relevant hereto has been, a citizen of the State of New York and is over the lawful age of majority, and purchased Super Stay Lipstick during the relevant Class Period.

23.     Upon information and belief, Defendant Maybelline is the manufacturer, seller and distributor of Super Stay Products.

24.     Upon information and belief, Maybelline's principal place of business is located in New York, New York.

4

25.     Upon information and belief, Maybelline products, including the Super Stay Products, are sold throughout the United States, including the States of Michigan, New York and New Jersey.

## JURISDICTION AND VENUE

26.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

27.     Leebove is a member of the Class and Michigan Subclass (defined below) and is a citizen of a State different from Defendant.

28.     Santa is a member of the New York Subclass (defined below) and is a citizen of the State of New York.

29.     Santiago is a member of the New Jersey Subclass (defined below) and is a citizen of a State different from Defendant.

30.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District and Defendant does significant business within this District.

## FACTUAL ALLEGATIONS

**Plaintiff Leebove's Purchase Of The Super Stay Products**

31.     Between May and June 2012, Leebove purchased tubes of Super Stay Gloss and Super Stay Lipstick from the Ulta cosmetic store located in Farmington Hills, Michigan.

32.     Leebove purchased the Super Stay Products because of their purported long lasting staying power, as advertised in the products' marketing, promotions and advertisements, and as inherent in the products' names.

33.     Leebove had purchased similar "long-lasting" Maybelline products such as the Maybelline Super Stay 24 Color, which performed in accordance with their advertised attributes.

34.     Unlike the other long lasting Maybelline products that Leebove previously purchased, neither of the Super Stay Products had the staying power as represented in their respective marketing, promotions and advertisements, and as inherent in their respective names.

35.     In fact, on each occasion Plaintiff applied the Super Stay Gloss, the product dried-up and faded away in less than one hour after application.

36.     Likewise, when Leebove applied the Super Stay Lipstick, the product only lasted a few hours before entirely fading from her lips.

37.     Leebove has ceased purchasing the products.

**Plaintiff Santa's Purchase Of The Super Stay Lipstick**

38.     On July 3, 2012, Santa purchased tubes of Super Stay Lipstick from the Rite Aid Pharmacy located at the corner of 83rd Street and 37th Avenue, Queens, New York.

39.     Santa paid a premium for the Super Stay Lipstick because of its purported long lasting staying power and the representations in the product's marketing, promotions and advertisements, and as inherent in the product's names.

40.     When Santa applied the Super Stay Lipstick, however, this more expensive Maybelline product did not conform to the representations in Maybelline's advertisements and only lasted a few hours.

41.     Santa has ceased purchasing the products.

**Plaintiff Santiago's Purchase Of The Super Stay Lipstick**

42.     On July 7, 2012 Santiago purchased tubes of Super Stay Lipstick from the Rite Aid located at 4910 Broadway New York, New York.

43.     Santiago purchased the Super Stay Lipstick after viewing misleading statements and advertisements.

44.     Santiago had a reasonable belief about the product induced by Maybelline's misrepresentations.

45.     Santiago purchased the Super Stay Lipstick because of its purported long lasting staying power, as advertised in the product's marketing, promotions and advertisements, and as inherent in the product's name.

46.     When Santiago applied the Super Stay Lipstick, however, the product failed to work for its intended purpose as it only lasted a few hours.

47.     Moreover, the Maybelline Super Stay Product was different from that for which Santiago bargained.

48.     Santiago has ceased purchasing the products.

## CLASS ALLEGATIONS

49.     Leebove brings this action on her own behalf and on behalf of a nationwide class of all persons who purchased and paid for Defendant's Super Stay Products (the "Class") pursuant to Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) for money damages.

50.     Leebove also brings this action on her own behalf and on behalf of a subclass of Michigan citizens who purchased and paid for Defendant's Super Stay Products (the "Michigan Subclass") pursuant to Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) for money damages.

51.     Plaintiff Santa brings this action on her own behalf and on behalf of a subclass of New York citizens (the "New York Subclass") who purchased and paid for Defendant's Super Stay Lipstick pursuant to Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) for money damages.

52.     Plaintiff Santiago brings this action on her own behalf and on behalf of a subclass of New Jersey citizens (the "New Jersey Subclass") who purchased and paid for Defendant's Super Stay Lipstick pursuant to Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) for money damages.

53.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class and Subclasses before the Court determines whether certification is appropriate.

54.     The "Class Period" in this case shall be the longest period of time permissible by any applicable statute of limitations.

55.     Excluded from the Class and Subclasses are:

a.      Defendant and any entities in which Defendant maintains a controlling interest;

b.      Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.      The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.      Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;

e.      All persons or entities that properly execute and timely file a request for exclusion from the Class and/or Subclasses;

     f.     Any attorneys representing the Plaintiffs or the Class and/or Subclass; and

     g.     All governmental entities.

56.     **Numerosity—Fed. R. Civ. P. 23(a)(1)**. The members of the Class and Subclasses are so numerous that joinder is impracticable.  At a minimum, thousands of persons purchased Super Stay Products during the relevant class period.  Moreover, thousands more will purchase the Super Stay Products based on the misleading statements described herein if Maybelline's practices are not stopped.

57.     **Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3).** Common questions of fact and law that are capable of classwide resolution exist as to all Class and Subclass members and predominate over questions affecting only individual Class and Subclass members. The answers to these common questions will advance this litigation significantly. Common questions capable of generating common answers apt to drive the resolution of the litigation include, but are not limited to, the following:

     a.     Whether Defendant's marketing, promotion, and advertising of Super Stay Gloss and Super Stay Lipstick is false, fraudulent, deceptive, unlawful, or misleading;

     b.     Whether Defendant has breached warranties made to the consuming public about their Super Stay Gloss and Super Stay Lipstick;

     c.     Whether Defendant's unfair, unconscionable, and deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful in violation of the Michigan Consumer Protection Act, M.C.L.A. 445.903 (the "MCLA") for the Michigan Subclass;

     d.     Whether Defendant's marketing, promotion, advertising and sale of Super Stay Lipstick is and was a deceptive act or practice in the conduct of business directed at

consumers, giving rise to a violation of the NY General Business Law § 349 (the "GBL 349") for the New York Subclass;

    e.  Whether Defendant engaged in false advertising through the marketing, promotion and advertising of Super Stay Lipstick in violation of common law and the New York General Business Law § 350 for the New York Subclass (the "GBL 350");

    f.  Whether Defendant's marketing, promotion and advertising of Super Stay Lipstick is and was a deceptive and unconscionable business practice, giving rise to a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. (the "CFA");

    g.  Whether Plaintiffs and the members of the Class and Subclasses sustained injuries or damages as a result of Defendant's false advertising of Super Stay Gloss or Super Stay Lipstick;

    h.  Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class and Subclasses;

    i.  Whether Plaintiffs and the members of the Class and Subclass are entitled to prospective injunctive relief enjoining Defendant from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

    j.  Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Class and Subclass.

    58.  **Typicality—Fed. R. Civ. P. 23(a)(3)**. Plaintiffs assert claims that are typical of the entire Class and Subclasses, in that Plaintiffs purchased and paid for Super Stay Gloss and

Super Stay Lipstick only to learn that the product did not have the attributes or characteristics as advertised.

59.     **Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)**. Plaintiffs are adequate representatives of the Class and Subclasses because they fit within the class definitions and their interests do not conflict with the interests of the members of the Class or Subclasses each plaintiff seeks to represent.  Plaintiffs are represented by experienced Class Counsel. Class Counsel has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class and Subclasses. Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the members of the Class and Subclasses.

60.     **Superiority—Fed. R. Civ. P. 23(b)(3).**  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of the Class members' claims and Subclass members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Class and Subclasses have suffered harm as a result of Defendant's bad faith, fraudulent, deceitful, unlawful, and unfair misconduct. Because of the size of the individual Class members' claims, and Subclass members' claims no members of the Class or Subclass could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the individual Class members and Subclass members would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendant would be permitted to retain the proceeds of its violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and

provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

61.     **Issue Certification - Fed. R. Civ. P. 23(b)(1),(b)(2), (c)(4), & (c)(5).** If and as appropriate, on the motion of a party and/or in the discretion of the Court, one or more of the issues or claims set forth in this Complaint may be certified under the provisions of Fed. R. Civ. P. 23 (b)(1),(b)(2), and/or (c)(4).

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment on Behalf of the Class

62.     Plaintiffs repeat and re-allege each and every allegation above, as if fully set forth herein.

63.     Defendant, as the manufacturer of Super Stay Products, sells the products directly and distributes the products to retailers for re-sale to the public.

64.     Leebove and the Class have conferred benefits on Defendant by paying money for the Super Stay Products.

65.     Defendant knowingly and willingly accepted monetary benefits from Plaintff and the Class, but Defendant did not honor its obligation.  Instead, Defendant benefited from the sales of the Super Stay Products without providing the value promised.

66.     Under such circumstances it is inequitable to allow Defendant to retain the enormous profits generated from the sale of Super Stay Products that Defendant unlawfully marketed, advertised and promoted.

67.     Allowing Defendant to retain these profits would induce companies to misrepresent key characteristics of their products as a means to increase sales.

68.     In deceptively marketing, advertising and promoting its Super Stay Products as lasting for extensive periods of time, Defendant unjustly enriched itself at the expense of Plaintiff and the Class members and is required to fully compensate them for the damages that they have suffered as a result of Defendant's actions.

69.     As a direct and proximate cause of Defendant's wrongful and deceptive misconduct, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendant of the benefit conferred by Plaintiff and the Class.

70.     By reason of the foregoing, Defendant is liable to Plaintiff and the Class members for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

<u>COUNT II</u>
**Breach Of Express Warranty on Behalf of the Class**

71.     Plaintiffs repeat and re-allege each and every allegation above, as if fully set forth herein.

72.     Defendant expressly warranted in its marketing, advertising and promotion of Super Stay Gloss, that the product is the "first ever 10HR stain gloss."

73.     Defendant expressly warranted in its marketing, advertising and promotion of Super Stay Lipstick that the product is a "14HR lipstick that won't weigh you down," and that the product has "[s]uper rich color with super staying power."

74.     Defendant made these express warranties in print advertisements, on the Internet, and on the label of the Super Stay Products.

75.     Defendant's above representations constitute affirmations of facts or promises to the Plaintiffs and the members of the Class that relate to the Super Stay Products and became part of the basis of their bargain in purchasing the same.

13

76.     Such affirmation of fact creates an express warranty that the Super Stay Products will conform to the express description and possess the characteristics as set forth in Defendant's marketing, promotional and advertising materials.

77.     Defendant breached its express warranties because the Super Stay Products do not conform to Defendant's promises, descriptions or affirmations of fact that Defendant made in its marketing, advertising and promotion.  Defendant's Super Stay Products therefore were not adequately packaged, labeled, sold, promoted or fit for the ordinary purposes for which they were used.

78.     Plaintiff and the Class members purchased Defendant's Super Stay Products based upon and in reliance on this false warranty.

79.     As a direct and proximate result of Defendant's breach of express warranty, Defendant is liable to Plaintiff and the other members of the Class for the damages incurred as a result of Defendant's action, including but not necessary limited to the purchase price of Defendant's Super Stay Products that they purchased, the amount of such damages to be determined at trial.

## <u>COUNT III</u>
### Violation of Michigan's Consumer Protection Act, M.C.L.A. 445.903 on Behalf of the Michigan Subclass

80.     Plaintiffs repeat and re-allege each and every allegation above, as if fully set forth herein.

81.     Defendant's marketing, advertising, promoting and selling of Super Stay Products constitutes unfair, unconscionable, and deceptive methods, acts, and practices in violation of the Michigan's Consumer Protection Act, M.C.L.A. 445.903.

82.     Defendant has engaged in a common scheme stemming from the same pattern of misrepresentations made to Leebove and the Michigan Subclass.

83.     Defendant markets, advertises, promotes and sells the Super Stay Products for personal, family or household purposes.

84.     Defendant represents that the Super Stay Products have characteristics, uses, and benefits that they do not have.

85.     Defendant, through its marketing, advertising and promotional materials represents that the Super Stay Products have certain long lasting staying power, which neither the Super Stay Gloss nor Super Stay Lipstick actually have.

86.     These misrepresentations are in fact inherent in the names of the Super Stay Products, i.e. "Super Stay 10HR Stain Gloss" and "Super Stay 14HR Lipstick."

87.     A reasonable person would have relied upon Maybelline's misrepresentations in purchasing the Super Stay Products.

88.     Defendant's demonstrated its intent to deceive Leebove and the Michigan Subclass through its pattern of misrepresentations in its advertisements of its Super Stay Products.

89.     Leebove and the Michigan Subclass acted in reliance upon Defendant's pattern of misrepresentations.

90.     Leebove and the Michigan Subclass thereby suffered an injury in purchasing Defendant's Super Stay Products and relying upon Maybelline's pattern of misrepresentations.

91.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

<u>**COUNT IV**</u>
**Violation of New York General Business Law § 349 on Behalf of the New York Subclass**

92.     Plaintiffs repeat and re-allege each and every allegation above, as if fully set forth herein.

93.     Defendant's business practices of marketing, advertising, promoting and selling its Super Stay Lipstick in a misleading, inaccurate, and deceptive manner by misrepresenting the product's purported long lasting staying power constitutes an unconscionable commercial practice, deception, and misrepresentation and, thus constitutes multiple, separate violations of the GBL §349.

94.     Defendant's marketing, advertising, promoting and selling of Super Stay Lipstick is a consumer-oriented practice, as Super Stay Lipstick is advertised, promoted, marketed and sold to consumers throughout the state of New York.

95.     In the marketing, advertising, promotion and sale of its Super Stay Lipstick to consumers, including Santa and the New York Subclass members, Defendant made the material misrepresentations and omissions throughout the State of New York, Defendant marketed, promoted and advertised the Super Stay Lipstick as having characteristics and attributes which it did not actually possess.

96.     Defendant's unlawful conduct is material in that it has the capacity to mislead or deceive consumers, including Santa and the New York Subclass members.

97.     Defendant's unconscionable commercial practices, false promises, misrepresentations and omissions are material in that they relate to matters which reasonable persons, including Santa and the New York Subclass members, would attach importance to their decisions or conduct relating to their purchase of Super Stay Lipstick.

98.     Defendant's misrepresentations affected the cost of Maybelline's products.

16

99.     Defendant charged Santa and the New York Subclass more money for these particular lipstick products as the Super Stay Products purported to have staying power and characteristics not found in its less expensive lipstick products.

100.    Defendant charged Santa and the New York Subclass a premium for these particular lipstick products as the Super Stay Products purported to have staying power and characteristics not found in its less expensive lipstick products.

101.    Defendant's deception caused an inflated price for the Super Stay Products resulting in injury to Santa and the New York Subclass.

102.    Said inflated price and the premium paid caused Santa and the New York Subclass to suffer actual harm and an injury recognized under the N.Y. Gen. Bus. Law.

103.    By reason of the foregoing, Defendant has violated N.Y. Gen. Bus. Law § 349, and should be enjoined from representing that their products have long lasting staying power. Defendant is also liable to Plaintiff and the other members of the New York Subclass for the damages that they have suffered as a result of Defendant's actions, such damages to be determined at trial, such damages to be trebled, plus attorneys' fees.

## COUNT V

**Violation of New York General Business Law § 350 on Behalf of the New York Subclass**

104.    Plaintiffs repeat and re-allege each and every allegation above, as if fully set forth herein.

105.    Defendant engaged in the false advertising of its Super Stay Lipstick in violation of the GBL § 350.

17

106.    As alleged with particularity herein, Defendant marketed, promoted and advertised the Super Stay Lipstick as having characteristics and attributes which it did not actually possess.

107.    Defendant's unconscionable commercial practices, false promises, misrepresentations and omissions set forth in this Complaint are material in that they have the capacity to mislead or deceive consumers, including Santa and the New York Subclass members.

108.    Defendant's unconscionable commercial practices, false promises, misrepresentations and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Santa and the New York Subclass members, would attach importance to in their decisions or conduct relating to the purchase of Super Stay Lipstick.

109.    Defendant's misrepresentations affected the cost of Maybelline's products.

110.    Defendant charged Santa and the New York Subclass more money for these particular lipstick products as the Super Stay Products purported to have staying power and characteristics not found in its less expensive lipstick products.

111.    Defendant charged Santa and the New York Subclass a premium for these particular lipstick products as the Super Stay Products purported to have staying power and characteristics not found in its less expensive lipstick products.

112.    Defendant's deception caused an inflated price resulting in injury to Santa and the New York Subclass.

113.    Said inflated price and the premium paid caused Santa and the New York Subclass to suffer actual harm and injury recognized under the N.Y. Gen. Bus. Law.

114.    By reason of the foregoing, Defendant has violated N.Y. Gen. Bus. Law § 350, and should be enjoined from representing that their products have long lasting staying power.

18

Defendant is also liable to Plaintiff and the other members of the New York Subclass for the damages that they have suffered as a result of Defendant's actions, such damages to be determined at trial, such damages to be trebled, plus attorneys' fees.

<u>**COUNT VI**</u>

**Violation of the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 on Behalf of the New Jersey Subclass**

115.     Plaintiffs repeat and re-allege each and every allegation above, as if fully set forth herein.

116.     Santiago and the members of the New Jersey Subclass are "consumers" as defined under the New Jersey Consumer Fraud Act.

117.     Defendant is a "person engaged in the "advertisement" or "sale" of "merchandise" as those terms are defined under N.J.S.A 56:8-1(c).

118.     As alleged with specificity herein, the Defendant's marketing of its Super Stay Products falls within the purview of the New Jersey Consumer Fraud Act.

119.     As detailed herein, during the Class Period, Maybelline engaged in a common plan and scheme through the use of misleading representations to induce consumers to purchase a higher priced version of its lipstick products.

120.     Defendant's business practices described herein have created an impression that is misleading and deceptive to the ordinary or average consumer.

121.     As alleged with particularity herein, Defendant engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentations as a means to induce Santiago and the members of the New Jersey Subclass into purchasing Super Stay Lipstick and paying more monies for this product than its other less expensive lipstick products.  All such actions constitute separate violations of the CFA.

122.    As a result of Defendant's practices, Santiago and members of the New Jersey Subclass have suffered an ascertainable loss of money or property in that the Super Stay Products were and are worth objectively less than what one could reasonably expect.

123.    As a result of Defendant's practices, Santiago and members of the New Jersey Subclass were misled into buying a lipstick product that was ultimately worth less to them as consumers than the long lasting Super Stay Products that they were promised.

124.    As a result of Defendant's practices, Santiago and members of the New Jersey Subclass have suffered an ascertainable loss of money or property in that they received less than what was promised.

125.    Santiago and the members of the New Jersey Subclass purchased the more expensive Maybelline Super Stay Products after having viewed one or more of their misleading advertisements and labels because said misleading statements lead them to reasonably believe that the more expensive Maybelline Super Stay Products had long lasting capabilities and characteristics, when Maybelline's other less expensive lipsticks did not.

126.    A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Santiago and the members of the New Jersey Subclass.  Had the material misrepresentation not been made about the long lasting characteristics of the Super Stay Products, consumers would have purchased Maybelline's less expensive lipsticks and not its Super Stay Products.

127.    By reason of the foregoing, Defendant has violated the CFA, and should be enjoined from representing that their products have long lasting staying power.  Defendant is also liable to Plaintiff and the other members of the New Jersey Subclass for the damages that

they have suffered as a result of Defendant's actions, such damages to be determined at trial, such damages to be trebled, plus attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on Plaintiffs' own behalf and on behalf of the Class and all Subclasses, pray for the following relief:

a. An Order that this action be maintained as a class action and that Plaintiffs are appointed the Class and Subclass representatives;

b. An Order appointing the undersigned attorneys as class counsel in this action;

c. An Order issuing a preliminary injunction enjoining Defendant from continuing to take the deceptive action as set forth in this Amended Complaint;

d. An Order issuing a permanent injunction enjoining Defendant from continuing to take the deceptive action as set forth in this Amended Complaint;

e. An Order declaring that Defendant's marketing, promotion and advertising of Super Stay Products is misleading, inaccurate and deceptive;

f. An Order declaring that Defendant's marketing, promotion, advertising and sale of Super Stay Products violates the Michigan Consumer Protection Act, M.C.L.A. 445.903, *et seq*.;

g. An Order declaring that Defendant's marketing, promotion, advertising and sale of Super Stay Lipstick violates the New York Deceptive Trade Practices Act, Section 349, General Business Law, *et seq*.;

h. An Order declaring that Defendant's marketing, promotion and advertising of Super Stay Lipstick violates the New York Deceptive Trade Practices Act, Section 350, General Business Law, *et seq*.;

i. An Order declaring that Defendant's marketing, promotion and advertising and sale of Super Stay Lipstick violates the New Jersey Consumer Fraud Act, N.J.S.A. 58:8-1, *et seq*.;

j. An Order declaring that Defendant has been unjustly enriched by its unlawful practices;

21

k.  An Order declaring that Defendant breached express warranties in marketing, advertising and promoting the Super Stay Products;

l.  An Order enjoining Defendant from continuing to deceptively and misleadingly market, promote and advertise the Super Stay Products;

m.  An Order directing Defendant to disgorge profits derived from its unlawful practices and to pay restitution to Plaintiffs and all members of the Class and Subclasses;

n.  Judgment for monetary relief pursuant to M.C.L.A. 445.903 on behalf of the Michigan subclass;

o.  Judgment for monetary relief pursuant to N.Y. Gen. Bus. Law § 349 on behalf of the New York subclass;

p.  Judgment for monetary relief pursuant to N.Y. Gen. Bus. Law § 350 on behalf of the New York subclass;

q.  Judgment for monetary relief pursuant to the NJ CFA on behalf of the New Jersey subclass, including treble damages and attorney's fees;

r.  Judgment for compensatory damages, the amount of which is to be determined at trial;

s.  Judgment for punitive damages;

t.  Judgment for treble damages and attorney's fees under the state statutory claims; and

u.  Such other further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, demands a trial by jury on all questions of fact raised by the complaint.

Date: December 21, 2012

**PARIS ACKERMAN & SCHMIERER LLP**

By: _____

Ross H. Schmierer, Esq.
David S. Paris, Esq.
Bryan H. Mintz, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
(T): (973) 228-6667
(F): (973) 629-1246


**NAGEL RICE, LLP**


By:     *s/ Bruce H. Nagel*
Bruce H. Nagel, Esq.
Diane E. Sammons, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
(T): (973) 618-0400
(F): (973) 618-9194

23